IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action: 20-mc-00184-KMT

In re: Subpoenas issued to Drs. John M. DeCelles and Elizabeth A. Knight in *Weyman v. 3M Defendants*, Case. No. 7:20-cv-00149 (N.D. Fla.)

# DEPARTMENT OF VETERANS AFFAIRS
# MOTION FOR PROTECTIVE ORDER AND TO QUASH

This is a motion for a protective order and to quash four subpoenas issued to two employees of the Department of Veterans Affairs by a private company in a case pending in Florida. The subpoenas seek testimony in Colorado on October 28 and 29, 2020. The Court should grant this motion because the federal employees subpoenaed by 3M, Drs. DeCelle and Knight, have not been approved to provide documents or testimony under the *Touhy* regulations of those employees' agency, the Department of Veterans Affairs ("VA"). The subpoenas are also overly burdensome because 3M counsel gave Drs. DeCelle and Knight between 6 and 11 days to respond to the subpoenas duces tecum and between 8 and 13 days to prepare for their depositions. Lastly, 3M failed to consult with Drs. DeCelle and Knight regarding the deposition dates set by the subpoenas, as required by D.C.COLO.LCivR 30.1.

**Factual background**

**I.     The VA's *Touhy* Regulations.**

The VA's *Touhy* regulations set forth the means by which private litigants may obtain non-public VA documents or testimony. 38 C.F.R. §§ 14.800-.810. As relevant here, the

regulations cover "the production or disclosure of documents of official information or records" of the VA and "the testimony of present or former VA personnel relating to any official information acquired by any individual as part of that individual's performance of official duties." 38 C.F.R. § 14.800. These regulations cover legal demands such as subpoenas. 38 C.F.R. § 14.802(a).

A party seeking VA documents or testimony covered by the *Touhy* regulations must provide, in an affidavit or written statement, "a summary of the nature and relevance of the testimony or records sought in the legal proceeding." 32 C.F.R. § 14.805. That written request must contain "sufficient information for the responsible VA official to determine whether VA personnel should be allowed to testify or records should be produced." *Id*.

The VA evaluates the *Touhy* request using factors listed in its *Touhy* regulations. 32 C.F.R. § 14.804. Those include 15 factors focusing on "[t]he need to avoid spending the time and money of the United States for private purposes and to conserve the time of VA personnel for conducting their official duties concerning servicing the Nation's veteran population." 32 C.F.R. § 14.804(a). The factors also consider such things as whether: the request is appropriate under the rules of the court that issued the subpoena; compliance with the request would violate a statute, regulation, directive or executive order; and complying with the request would make it appear that the VA favored one litigant over another; among other factors.

VA personnel may provide testimony or provide VA records in legal proceedings covered by the VA's *Touhy* regulations only as authorized by those regulations. 32 C.F.R. § 14.803. If the VA official responsible for evaluating the *Touhy* request has not yet made a determination regarding that request, the person subpoenaed is to provide the requestor or the

court with a copy of the VA's *Touhy* regulations and seek a stay of the request or demand pending a final determination by the responsible VA official. 32 C.F.R. § 14.807(d). If the court denies to stay the request and the VA still has not approved the request, then the VA personnel must "respectfully decline to comply with the demand, request, or order." 32 C.F.R. § 14.807(e) (citing *Touhy*, 340 U.S. 462).

## II.     3M's *Touhy* requests and subpoenas

3M sent *Touhy* requests to the VA requesting documents and testimony from VA Drs. DeCelles and Knight on September 21, 2020. The VA had previous provided all medical records related to Mr. Wayman to 3M. The VA is evaluating the *Touhy* requests and has not yet issued a decision regarding whether to authorize Drs. DeCelles and Knight to provide documents or testimony.

3M subsequently served Drs. DeCelle and Knight with subpoenas decus tecum and for depositions. 3M served the subpoenas on Dr. DeCelle on October 16, 2020, with a return date of October 27, thus affording the agency only 11 days—six business days—to respond to the subpoena duces tecum and only two more days to prepare for deposition. Ex. 1 (subpoena duces tecum), Ex. 2 (subpoena for deposition), Ex. 3 (proof of service). 3M gave Dr. Knight even less time by serving her on October 20, 2020 with return date for the subpoena duces tecum for October 26—only six days and three business days later—and for a deposition two days later. Ex. 4 (subpoena duces tecum), Ex. 5(subpoena for deposition), Ex. 6 (proof of service).

3M counsel did not confer with VA counsel before setting the deposition dates or the dates to comply with the subpoenas duces tecum.

3

**Argument**

The Court may issue a protective order to protect a party or person from, among other things, annoyance or undue burden. Fed. R. Civ. P. 26(c)(1). Here, requiring Drs. DeCelle and Knight to comply with the subpoenas would subject them to annoyance and an undue burden because the VA's *Touhy* regulations bar them from complying, 3M provided little time for the doctors to respond to the subpoenas duces tecum and for depositions, and 3M sets the deposition dates without conferring with them.

I. **The Motion Should Be Granted Because the Request for Documents and Testimony Has Not Been Authorized.**

   A. **The Tenth Circuit has refused to enforce a subpoena issued to a nonparty federal employee, and this Court should do the same.**

The Tenth Circuit has held that subpoenas issued to nonparty federal employees must be quashed when the federal employee has not been authorized to comply with a subpoena based on the agency's *Touhy* regulations. The Tenth Circuit first addressed this issue in *Saunders v. Great W. Sugar Co.*, 396 F.2d 794 (10th Cir. 1968). There, the court vacated the district court's order compelling Small Business Administration ("SBA") officials to respond to subpoenas after the officials declined to allow disclosure of information pursuant to agency regulations. *Id.* at 794-95. Stating that it was "bound by *Touhy*," the court directed the subpoenaing party to adjudicate the agency's claim of privilege in a separate action, in the District of Columbia—the only federal court at that time with jurisdiction to hear actions seeking relief from agency decisions denying disclosure of information. *Id.*

Several years later, the Tenth Circuit again applied *Touhy* and *Saunders* when it quashed a subpoena that the district court enforced in violation of an agency's *Touhy* regulations. In *U.S.*

4

*Steel Corp. v. Mattingly*, 89 F.R.D. 301 (D. Colo. 1980) ("*Mattingly I*"), the district court granted a plaintiff's motion to compel compliance with a subpoena issued to a National Bureau of Standards ("NBS") employee. That employee had written an accident report, with findings and conclusions adverse to the plaintiff, following the explosion of a large steel cylinder manufactured by the plaintiff. *Id.* at 302. The district court stated that the "Housekeeping Act," interpreted in *Touhy* and on which NBS relied, created no privilege of the government against production, and that it would be "egregiously unfair" to allow NBS to withhold information. *Id.* at 303-04.

The Tenth Circuit reversed. It held that "the merits of this dispute are controlled by … *Touhy* … and *Saunders*." *U.S. Steel Corp. v. Mattingly*, 663 F.2d 68, 68 (10th Cir. 1980) ("*Mattingly II*"). It also held that the district court "erred in enforcing the subpoena," and directed it to recall the subpoena and to "dismiss all proceedings with regard" to the subpoena. *Id. Mattingly II* remains the law in this circuit. *See, e.g.*, *Kansas v. Call*, 961 F.2d 220 (table) (10th Cir. 1992) (quashing subpoena on nonparty federal official when agency did not authorize testimony under *Touhy* regulations); *Oklahoma v. Hopkins*, 162 F.3d 1172 (table) (10th Cir. 1998) (same).

**B. The District of Colorado has refused to enforce subpoenas issued to nonparty federal employees in similar circumstances.**

This Court has repeatedly followed *Saunders* and *Mattingly II*, quashing (or not enforcing) subpoenas in similar circumstances. For example, in *Haithcox v. GEO Group, Inc.*, No. 07-cv-00160-REB-MEH, 2008 WL 2487913, *1 (D. Colo. June 16, 2008), a plaintiff with a case pending in this Court served a federal subpoena on a Department of Homeland Security

("DHS") employee to testify at trial in an action to which the agency was not a party. The Court quashed the subpoena for two reasons. First, the subpoena was not served as required by the agency's regulations. *Id.* Second, the court approved of the agency's *Touhy* decision that determined that the employee should not be permitted to testify. *Id.* "Applying its regulations, the DHS has determined that [the employee] should not be permitted to testify as required in the subpoena. Given this determination, the subpoena is not enforceable." *Id.* (citing *Touhy*, 340 U.S. at 468-70). In *Colorado v. Rodarte*, No. 09-cv-02912-PAB-MEH, 2010 WL 924099, at *2-3 (D. Colo. Mar. 9, 2010), the Court quashed a state-court subpoena enforced against an FBI agent. *Id.* The issue before the court was "whether this Court, based on derivative jurisdiction, can compel the F.B.I. to disclose the information sought by the defendants' subpoenas." *Id.* at *2. The Court held that the appropriate means for challenging the FBI's *Touhy* decision in federal court was to bring an APA action. *Id.* (citing *In re Gray*, No. 97-6385, 1998 WL 712663, at *1 (10th Cir. Oct. 13, 1998)).

"The message of *Mattingly II* has been heeded by District Courts in the Tenth Circuit ever since." *Quezada v. Mink*, No. 10-cv-00879-REB-KLM, 2010 WL 4537086, *4 (D. Colo. Nov. 3, 2010); *see also Tholen Supply Co., Inc. v. Continental Cas. Co.*, 859 F. Supp. 467, 469-70 (D. Kan. 1994) (relying on *Saunders* in holding that "under *Touhy* and controlling Tenth Circuit precedent, this court cannot compel the [federal] agents to obey the subpoenas contrary to their Director's instructions under the valid agency regulation"). As the Seventh Circuit has noted, "*Touhy* is part of an unbroken chain of authority that supports the [DOJ]'s contention that a federal employee cannot be compelled to obey a subpoena, *even a federal subpoena*, that acts against valid agency regulations." *Edwards v. U.S. Dep't of Justice*, 43 F.3d 312, 317 (7th Cir.

1994) (emphasis added). Thus, as this line of authority demonstrates, this Court has repeatedly followed *Mattingly II* and *Saunders* to quash subpoenas on federal employees when their federal agencies declined to authorize them to testify. This Court should likewise quash the subpoena.

### C. Sovereign immunity bars compelling a federal employee from providing testimony or documents in violation of his employer's *Touhy* decision.

The motion to quash should also be granted because, as a matter of sovereign immunity, a nonparty federal employee may not be compelled to testify without agency approval. "Waivers of the Government's sovereign immunity, to be effective, must be 'unequivocally expressed.'" *United States v. Nordic Vill. Inc.*, 503 U.S. 30, 33 (1992) (citation omitted). A waiver must "be construed strictly in favor of the sovereign." *McMahon v. United States*, 342 U.S. 25, 27 (1951) (footnote omitted). Sovereign immunity shields the federal government from liability, but also from "the burdens of becoming involved in any part of the litigation process, from pretrial wrangling to trial itself." *United States v. Moats*, 961 F.2d 1198, 1203 (5th Cir. 1992), quoted in *Raccoon Recovery, LLC v. Navoi Mining & Metallurgical Kombinat*, 244 F. Supp. 2d 1130, 1141 (D. Colo. 2002).

Sovereign immunity, which is not a waivable defense, Fed. R. Civ. P. 12(h)(3), applies in the context of responding to a subpoena issued against a federal employee who is not a party to a lawsuit in federal court. *See, e.g., Boron Oil Co. v. Downie*, 873 F.2d 67, 71 (4th Cir. 1989) ("subpoena proceedings fall within the protection of sovereign immunity even though they are technically against the federal employee and not against the sovereign,"). Subpoena enforcement proceedings haul the government into federal court without its consent, thus implicating sovereign immunity. *U.S. Envtl. Prot. Agency v. Gen. Elec. Co.*, 197 F.3d 592, 597 (2d Cir. 1999) ("We agree with the district court that the enforcement of this subpoena duces tecum

issued by General Electric to the EPA would compel the EPA to act and therefore is barred by sovereign immunity in the absence of a waiver."). Thus, "it is sovereign immunity, not housekeeping regulations, that gives rise to the Government's power to refuse compliance with a subpoena." *COMSAT Corp. v. Nat'l Sci. Found.*, 190 F.3d 269, 277 (4th Cir. 1999). Therefore, sovereign immunity bars compelling Ms. Baker's testimony here.

### D. The APA provides the only procedure and standards for challenging VA's *Touhy* decision.

If a party seeking testimony from a nonparty federal employee seeks to compel her testimony despite the agency's decision not to authorize testimony, the party must file an independent action for injunctive relief against the United States under the APA. *See, e.g.*, *In re Gray*, 1998 WL 712663, *1 (stating that an APA action is among the potential remedies for a person dissatisfied with an agency's *Touhy* decision); *Rodarte,* 2010 WL 924099, at *2 (same); *Quezada*, 2010 WL 4537086, at *5 (same). The APA waives the United States' sovereign immunity so as to allow a court to award injunctive relief in such a lawsuit. *See Simmat v. U.S. Bureau of Prisons*, 413 F.3d 1225, 1233 (10th Cir. 2005) ("Congress passed legislation in 1976 [the APA] to waive sovereign immunity in most suits for nonmonetary relief.").

However, the APA's waiver of sovereign immunity is limited to cases brought against the United States. The APA only waives the United States' sovereign immunity in an "action in a court of the United States seeking relief other than money damages and stating a claim *that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority*…." 5 U.S.C. § 702 (emphasis added). In this case, the United States is not a party and no claims are asserted against the United States, so the APA waiver of sovereign immunity does not apply. Because any waiver of sovereign immunity must be construed strictly

8

in the United States' favor, *McMahon*, 342 U.S. at 27, expanding it to include subpoena enforcement proceedings in federal court where the government is not a party would violate that principle.

Rule 45 does not waive sovereign immunity, either. Fed. R. Civ. P. 82 ("These rules do not extend or limit the jurisdiction of the district courts"); *United States v. Sherwood*, 312 U.S. 584, 589-90 (1941) (Federal Rules do not authorize a suit against the United States to which it has not consented).

In short, Plaintiff cannot challenge the *Touhy* determination in the action before this court, or the court in which the underlying action is pending. If Plaintiff wants to challenge the agency's *Touhy* determination, sovereign immunity and Tenth Circuit precedent require her to file an independent action against the United States.

## II.     The motion should be granted because compliance would be overly burdensome.

In addition to quashing the subpoena under the agency's Touhy regulations, the Court should also quash the subpoena under Rules 26 and 45. As shown below, the requests are unduly burdensome and the subpoena did not provide a reasonable time to respond.

### A.     The Subpoena Requests Are Unduly Burdensome.

Federal Rules of Civil Procedure 26(c)(l) and 45(c)(3) protects parties or persons from an "undue burden." "Although discovery is by definition invasive, parties to a lawsuit must accept its travails as a natural concomitant of modern civil litigation. Non-parties have a different set of expectations. Accordingly, concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs." *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998).

The need to reduce the discovery burden on nonparties is especially important where, as here, the request is for the deposition of a government employee. The government has a "legitimate interest in orderly governmental operations and the proper use of officials' time." *Alex v. Jasper Wyman & Son*, 115 F.R.D. 156, 157 (D. Me. 1986); *see also Sharon Lease Oil Co. v. F.E.R.C.*, 691 F. Supp. 381, 384 (D.D.C. 1988) (same). Indeed, "[c]ourts generally refuse to compel the deposition of a government witness if the [requesting party] may obtain discovery by an alternative and less burdensome method to the government." *See, e.g., Gomez v. City of Nashua, N.H.*, 126 F.R.D. 432, 436 (D. N.H. 1989).

Here, the VA has already produced the relevant records related to Mr. Wayman's care.

The Court should consider the cumulative impact similar requests would have on the Department. *Westchester Gen. Hosp., Inc. v. HHS, Ctr. for Medicare & Medicaid Servs.*, 770 F. Supp. 2d 1286, 1298 (S.D. Fla. Feb. 23, 2011) ("[A]ny given request may seem small in isolation, but an agency has an interest in protecting itself against the cumulative disruption to its duties that would come with routinely granting requests for testimony.") (citing *Moore v. Armour Pharmaceutical Co.*, 927 F.2d 1194, 1198 (11th Cir. Apr. 2, 1991)). 3M is a defendant in multi-district litigation in the Northern District of Florida related to the safety of 3M products. *See In re 3M Combat Arms Earplug Products Liability Litigation*, Case No. 3:19-md-2885-MCR-GRJ (N.D. Fla.). The United States of America is not a party in this litigation. The 3M litigation involves more than 150,000 plaintiffs who likely were examined at some point subsequent to their military careers by various Department personnel. 3M has already sent Touhy or subpoena requests for over 30 current or former government employees. 3M is likely to continue serving these unnecessary, burdensome subpoenas absent court intervention. The cumulative impact of

removing mission-essential officers from their official duties and responsibilities in order to comply with 3M's unceasing requests would be highly disruptive to the Department.

### B. The Subpoena Does Not Allow a Reasonable Time to Comply.

The subpoena fails "to allow a reasonable time to comply." Fed. R. Civ. P. 45(d)(3)(A)(i). The subpoenas here do not do so. 3M served the subpoena on Dr. DeCelle on October 16, 2020, with a return date of October 27, thus affording the agency only 11 days—six business days—to respond to the subpoena duces tecum and only two more days to prepare for deposition. 3M gave Dr. Knight even less time by serving her on October 20, 2020 with return date for the subpoena duces tecum for October 26—only six days and three business days later— and for a deposition two days later. That is not a reasonable amount of time to comply, especially given the fact that Drs. DeCelle and Knight are providing health care during a pandemic and their schedules are filled weeks in advance with appointments to see veterans.

The local rules show that this is not a reasonable amount of time to comply. D.C.COLO.LCivR 30.1 requires that "[u]nless otherwise ordered by the court, reasonable notice for taking a deposition shall be not less than 14 days, as computed under Fed. R. Civ. P. 6." It was less here.

### C. 3M did not confer with Drs. DeCelle and Knight before setting the deposition dates.

D.C.COLO.LCivR 30.1 also requires that "[b]efore sending a notice to take a deposition, counsel or the unrepresented party seeking the deposition shall make a good faith effort to schedule it in a convenient and cost-effective manner." 3M counsel did not confer with VA counsel before setting the deposition dates. The Court should issue a protective order and quash the subpoenas for this additional reason.

11

**Conferral**

Undersigned counsel conferred with counsel for 3M before filing this motion. Counsel attempted in good faith to resolve this issue without the need for a motion. Counsel were unable to do so.

**Conclusion.**

For the reasons set forth above, VA's motion for a protective order and to quash should be granted.

Dated October 27, 2020					Respectfully Submitted,

						JASON R. DUNN
						United States Attorney

						*s/ Timothy B. Jafek*[1]
						TIMOTHY B. JAFEK
						Assistant United States Attorney
						1225 Seventeenth Street, Suite 700
						Denver, Colorado 80202
						(303) 454-0100
						(303) 454-0407 fax
						Timothy.jafek@usdoj.gov
						Attorney for Defendant

---

[1] I certify that I am a member in good standing of the bar of this Court.

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
CERTIFICATE OF SERVICE (CM/ECF)**

      I hereby certify that on October 27, 2020, I electronically filed the foregoing with the Clerk of Court using the ECF system which will send notification of such filing to the following e-mail addresses:

and I hereby certify that I will mail to the following non CM/ECF participants in the manner (mail, hand delivery, etc.) indicated by the nonparticipant's name:

    Mary Kim (by email)
    Mary.kim@dechert.com
    Counsel for 3M and listed as point of contact for noticing party on notices of intent to issue subpoenas

    Larry Hill (by email)
    lhill@mhw-law.com
    Counsel for 3M and signer of subpoenas

                                                 *s/ Timothy B. Jafek*
                                                 TIMOTHY B. JAFEK